UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JONNELL SAUCEDA,<br><br>    Plaintiff,<br><br>v.<br><br>CENTRAL POOL SUPPLY, INC.<br><br>    Defendant. | Case No. 14-4053<br><br>**JURY DEMAND** |

# COMPLAINT

Now comes, Jonnell Sauceda, the plaintiff, by Ryan S. McCracken, his attorney, and for his complaint against Central Pool Supply, Inc. states:

## I.
## Jurisdiction & Venue

1.      Jurisdiction to hear plaintiff's claims under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, under 28 U.S.C. § 1343 (4). Supplemental Jurisdiction exists to hear Plaintiff's claims under the Illinois Human Rights Act exists under 28 U.S.C. § 1367 (a).

2.      Plaintiff, Jonnell Sauceda, is domiciled in Rock Island, Rock Island County, Illinois. Defendant, Central Pool Supply, Inc., does business in Moline, Rock Island County, Illinois. The claim arose in Rock Island County, Illinois. Venue is founded in the Central District of Illinois under 28 U.S.C. § 1391.

3.      The occurrences complained of happened on **July 1, 2013** in the City of

Moline, Rock Island County, Illinois.

## II.
## The Parties

4. Plaintiff, Jonnell Sauceda, is a half French and half Hispanic male 43 years of age domiciled in Rock Island, Rock Island County, Illinois. He was employed by Central Pool Supply, Inc. as a truck driver from February 20, 2012 until July 1, 2013.

5. Central Pool Supply, Inc. is a corporation organized and existing under the laws of the State of Illinois and maintains offices in Peoria, East Peoria, and Moline, Illinois. Central Pool Supply operates as a wholesale distributor of a large number of products associated with swimming pools; including pools, hot tubs, spas, pool and spa parts, and chemicals. Central Pool Supply does business with customers in the states of Illinois Missouri, Indiana, Wisconsin, and Iowa.

## III.
## The Incidents

6. Central Pool Supply, Inc. ("CPS") is owned and operated by brothers Richard Gephardt, President and Randall Gephardt. Richard Gebhardt is responsible for the East Peoria and Peoria locations, while Randall Gebhardt is responsible for the Moline location. Sauceda was employed at the Moline, Illinois location and was supervised by Randall Gephardt.

7. Sometime around January 2012, Randall Gebhardt told Mitchell George, CPS warehouse manager, to hire another driver. During the initial stages of the hiring process, Randall Gebhardt told George, "Do not hire any Mexicans or black people. All

they do is steal from me." Later, George interviewed Jonnell Sauceda and hired him for the driver position based on his work experience and qualifications. Randall Gebhardt was upset with George for hiring Sauceda after he found out Sauceda was a Mexican-American.

8. Sauceda was hired by Central Pool Supply, Inc. ("CPS") at its Moline, Illinois location as a truck driver on February 20, 2012. As a truck driver for CPS, Sauceda's job responsibilities included both warehouse and delivery duties. In the warehouse, Sauceda's duties included stocking shelves, loading and unloading trucks, and order filling. As a driver, Sauceda made deliveries to customers in Illinois, Wisconsin, and Iowa, as well as deliveries between CPS's locations in East Peoria, Illinois and Moline, Illinois. He was also responsible for minor mechanical repairs on the delivery trucks.

9. Throughout Sauceda's employment, his supervisor, Randall Gebhardt made the following racially derogative marks about Saceda's race:

   A. September 16, 2012, was Mexican Independence Day, Randall Gebhardt asked Sauceda is a sarcastic tone whether he wanted the day off to celebrate, and Sauceda replied yes. Then, Randall Gebhardt sarcastically refused to provide Sauceda with the day off he offered.

   B. In late September 2012, Randall Gebhardt asked Sauceda "Don't all Mexicans drink tequila and ride borrows?".

   C. In several instance of anger Randall Gebhardt would yell "All Mexicans are fucking stupid".

   D. Randall Gebhardt told Sauceda he was a "Frenchican" - referring to the fact that Sauceda's mother was Mexican and his father was

3

      French.

E.     On May 5, 2013, the date of the Mexican Holiday Cinco de Mayo, Randall Gebhardt asked Sauceda where his sombrero was.

F.     On June 24, 2013, Sauceda had been unloading a truck in the rain. When Sauceda returned inside the warehouse soaking wet from the rain, Randall Gebhardt asked him, "What's the matter Silver, aren't you used to getting wet" and slapped Sauceda on the back. Gebhardt's statement and action of slapping Sauceda's back were made to imply Sauceda was a "wetback" – a derogatory term used to reference a person's Mexican race.

G.     In referring Cheri Bustos, then congressional candidate, Randall Gebhardt told Sauceda "if she wins there will be tacos for everyone."

H.     When speaking to Congressman Robert Schilling in the presence of Sauceda, Randall Gebhardt referred to President Barack Obama as a "monkey" and as a "nigger".

I.     A day or two after an African American employee was hired named Howard Davis, Randall Gebhardt told Sauceda that "he had never had any luck with hiring niggers" and told Sauceda to cut Davis' hours.

J.     When a driver called in sick, Randall Gebhardt stated to Sauceda "Why don't you hire a fucking Mexican they will work until their fingers fall off?".

K.     Whenever Sauceda could not hear something Randall Gebhardt said, he would tell Sauceda "didn't you hear what I said? Maybe if I spoke Spanish you would understand what I said."

L.     Randall Gebhardt would ask whether Sauceda had any cousins who were in the United States illegally.

M.     Randall Gebhardt frequently used the phrase "dirty Mexican" in Sauceda's presence. He would also refer to Sauceda as "you Mexican this" or "you Mexican that."

N.     When Hispanic customers would come into the store, Randall

        Gebhardt would tell Sauceda, "tell them we don't accept pesos".

10.    In early June 2013, Sauceda complained to Randall Gebhardt that he was continually subjected to racial harassment. Sauceda told Gebhardt that he should be treated with respect. Gebhardt responded, "I can do what I want".

11.    In the middle of June 2013, Sauceda contacted Duane Drummond, Manager of Central Pool and Supply's East Peoria, Illinois. Sauceda complained to Drummond about how Sauceda was treated by Randall Gephardt.  Drummond told Sauceda that Richard Gebhardt, President of CPS, treated other employees similar to the way Randall Gabhardt treated him. Drummond told Sauceda that it would be best not to complain to Richard Gebhardt.

12.    On July 1, 2013, Sauceda called the main office to take one of his accumulated sick days. Sauceda talked to Debbie Blanch, who is responsible for payroll, and she told Sauceda that he could take a sick day because he had accumulated sick days available. Then, Sauceda called Randall Gebhardt to inform him that he was taking one of his sick days. Randall Gebhardt told Sauceda, "its better if we part ways because of the mistakes".  Sauceda responded by asking if he was fired, and Gebhardt responded that he was fired.

13.    On July 3, 2013, CPS Manager Greg Somner sent Sauceda a text message with a picture of a porta potty.  The picture was of the writing in the porta potty that stated, "viva la border patrol, alto Mexicano drogas – no mas illegals por hijos" which translates "long live the border patrol, stop Mexican drugs, nor more illegals".  A true

and correct copy of the picture sent to Sauceda is attached hereto as Exhibit No. 1.

14. During Sauceda's employment with CPS he was never written up or reprimanded for poor employment performance.

15. Other white employees at CPS were not subjected to the same treatment by Randall Gabhardt as Sauceda was.

## IV.
## Plaintiff's Claims

16. At all times material here, there was in full force and effect in the United States of American a certain statute known as the Civil Rights Act of 1871 as amended by the Civil Rights Act of 1991, which provided:

**42 U.S.C. § 1981. Equal rights under the law**

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law. 28 U.S.C. § 1343 (a)(4). 42 U.S.C. § 1981; P.L. 102-166 (May 17, 1991).

17.     The racial harassment Randall Gebhardt directed at plaintiff and the termination of plaintiff's employment, as specifically alleged in Part III ¶ 6-15, impaired plaintiff's equal enjoyment of the benefits and conditions of his contract for employment with Central Pool and Supply, Inc. and was discrimination based on race contrary to and in violation of 42 U.S.C. § 1981.

18.     At all times material here, there was in full force and effect in the State of Illinois a certain statute known as the Illinois Human Rights Act, which provided:

**775 ILCS 5/2-102**

**Civil Rights Violations--Employment**. It is a civil rights violation:

(A) Employers. For any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status.

**775 ILCS 5/6-101**

**§ 6-101. Additional Civil Rights Violations**. It is a civil rights violation for a person, or for two or more persons to conspire, to:

(A) Retaliation. Retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment or sexual harassment in elementary, secondary, and higher education, discrimination based on citizenship status in employment, or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act;

(B) Aiding and Abetting; Coercion. Aid, abet, compel or coerce a person to commit any violation of this Act;

19.     The racial harassment Randall Gebhardt directed at plaintiff and the

termination of plaintiff's employment, as specifically alleged in Part III ¶ 6-15, was unlawful discrimination in violation of the Illinois Human Rights Act.

## VI.
## Relief Requested

20. As a direct and proximate result of the foregoing discrimination, Sauceda has lost income in the amount of $7,332.00 per year for the next five years for a total of $36,660.00 in lost income, and Sauceda has in the past and will in the future suffer emotional distress.

21. Sauceda has and will continue to incur attorney's fees and expenses in the prosecution of this action for which he is entitled to an award as a part of costs as a prevailing plaintiff under 42 U.S.C. §1988.

22. The conduct of Central Pool and Supply, Inc., acting through its managerial agents, is such that for the purposes of punishment and by way of example, plaintiff is entitled to an award of punitive damages to punish the defendant and deter others from like conduct in the future.

## VI.
## Satisfaction of Preconditions of Action

24. Sauceda filed a Charge of Discrimination with the Illinois Department of Human Rights on August 23, 2013.

25. The Illinois Department of Human Rights issued a Notice of Substantial Evidence on April 15, 2014. The Notice of Substantial Evidence gave Sauceda 90 days to file a complaint in the appropriate court upon receipt of the notice. Sauceda filed this

action on June 9, 2014, which is within 90 days of his receipt of the Notice.

## VII.
## Prayer for Relief

WHEREFORE, Plaintiff, Jonnell Sauceda, prays for judgment in his favor and against the Defendant, Central Pool and Supply, Inc. in the following particulars:

1. Awarding compensatory damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00).

2. An award of punitive damages in the amount of SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($750,000.00).

3. An award of plaintiff's reasonable attorney's fees and expenses incurred in prosecuting this action as a part of costs under 42 U.S.C. § 1988.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,

s/Ryan S. McCracken
RYAN S. McCRACKEN
Attorney for the Plaintiff